UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Donna M. Henderson,

Plaintiff,

v.

Ford Motor Company,

Defendant.

Civil File No. 01-1944 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment. Defendant also moved to strike various items from Plaintiff's pleadings. As the Court indicated at the hearing, the Motion to Strike is denied.[1] However, for the following reasons, Defendant's Motion for Summary Judgment is granted.

**BACKGROUND**

Plaintiff Donna Henderson (formerly Donna Evans) was employed at the Twin Cities Assembly Plant of Defendant Ford Motor Company ("Ford"). Her employment was terminated on September 23, 1999. On July 18, 2000, Henderson filed a charge of discrimination against Ford with the Equal Employment Opportunity Commission ("EEOC") and the Minnesota Department of Human Rights ("MDHR"). In this charge, Henderson

---

[1] In opposition to the Motion to Strike, Plaintiff filed a new affidavit containing some information relevant to the Motion, but much information intended to offer more opposition to Defendant's Motion for Summary Judgment. This is clearly improper. However, because none of the new materials submitted changes the Court's resolution of the Motion for Summary Judgment, the Court will deny the Motion to Strike.

FILED MAY 1 6 2003
RICHARD D. SLETTEN, CLERK MAY 1 6 2003
JUDGMENT ENTD________
DEPUTY CLERK________

alleged that Ford had discriminated against her based on disability and that Ford had retaliated against her. Specifically, Henderson contended that Ford failed to accommodate her disability, placed her in "no work" status, and despite her seniority, failed to promote her. Further, she alleged that she was retaliated against because of a previously filed complaint against Ford and because she provided testimony in other employee suits against Ford.

The EEOC issued its finding of no probable cause on July 26, 2001. Henderson filed this suit in October 2001, raising claims of discrimination on the basis of race, religion, and disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363.01 et seq., and a claim of retaliation under Title VII and the MHRA.

Ford moved to dismiss Henderson's race and religion discrimination claims because those claims were not mentioned in Henderson's EEOC charge. This Court granted the motion in February 2002. Ford now seeks summary judgment on Henderson's remaining claims of disability discrimination and retaliation.

Henderson has a long history of complaining about discrimination at Ford. She sued Ford after she was terminated in the early 1990s, claiming sexual harassment and discriminatory and retaliatory discharge. This lawsuit culminated in a bench trial verdict in her favor and she was reinstated and given substantial damages, including punitive damages. Evans v. Ford Motor Co., 768 F. Supp. 1318, 1327 (D. Minn. 1991) (Murphy, J.). She has

also assisted numerous other employees in pressing discrimination claims against Ford.

Henderson also has a long history of injuries and mental health problems that have kept her from working for months and even years at a time. Some of the injuries were work-related, others stemmed from two automobile accidents in which she was involved. The second of these accidents, and the relevant accident for the purposes of this lawsuit, occurred in March 1998. Henderson was not cleared by her physician to return to work after this accident until November 30, 1998. Her clearance to return to work contained a laundry list of work restrictions, however, and Ford contends that there were no jobs available that fit Henderson's restrictions at that time. Henderson now claims that there were jobs available, and that Ford discriminated against her or retaliated against her by placing less senior employees in these jobs. However, she offers no evidence that she ever requested one of the jobs or that an employee with similar restrictions and less seniority was given one of the jobs during the period at issue. The Collective Bargaining Agreement ("CBA") between Ford and the union to which Henderson belonged provides that it is the employee's responsibility to notify Ford of available jobs that might meet that employee's work restrictions.

Henderson's work restrictions were in effect until September 1, 1999. Because there were no jobs available that were consistent with Henderson's restrictions, she was on no work available ("NWA") medical leave during this time and received disability benefits. In July 1999, Henderson moved to Phoenix, Arizona, to attend classes at the High-Tech Institute. She does not explain how she would have been available to return to the Ford plant

had a job fitting her restrictions become available during the time she lived in Phoenix. Henderson remained in Phoenix until January 2001.

When Henderson's restrictions expired on September 1, 1999, she submitted a letter from her physician purporting to extend her restrictions until December 1999. Under the terms of the CBA, Ford then requested that Henderson return to the plant for a medical evaluation. The letter informed Henderson that she should report within five working days or face termination. Henderson did not return to the plant and, on September 22, 1999, she was terminated. She grieved the termination through the union, but the union did not press her grievance with Ford.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Inadmissible hearsay evidence, however, may not be used to defeat a motion for summary judgment. Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993). In employment discrimination cases, the Eighth Circuit has cautioned that summary judgment should be granted sparingly. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B. Merits**

To establish either a disability discrimination claim or a retaliation claim, Henderson must show that she suffered an adverse employment action and that there is a causal connection between the adverse action and her disability or her protected activities. See, e.g., Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135-36 (8th Cir. 1999) (ADA and Title VII retaliation). There are two adverse actions at issue here: the termination of Henderson's employment, and Ford's alleged failure to offer her jobs while she was on NWA status. Henderson's claims that arise out of Ford's alleged failure to offer her jobs are barred by the relevant statutes of limitations. In addition, there is no question of material fact on the existence of a causal connection between her protected activities and her termination, and her

retaliation claim therefore fails.

1. Statute of Limitations

Ford contends that any claim that rests on the alleged failure to offer Henderson jobs during her NWA leave is untimely and must be dismissed. The MHRA provides that a charge of discrimination must be filed within one year of the last discriminatory act. Minn. Stat. § 363.03, subd. 3. Title VII requires that a plaintiff file a charge with the EEOC or analogous state agency within 300 days of an act of discrimination. 42 U.S.C. § 2000e-5. For the purposes of Henderson's claims, the discriminatory act were Ford's failure to offer her a job after she notified Ford that there were jobs available that met her work restrictions. There is no evidence that Henderson ever notified Ford, as she was required to do, that a suitable job was available.[2] However, even assuming that Henderson orally notified Ford about potentially available jobs, she left the Twin Cities on July 20, 1999, and testified that her last request to Ford was made at the end of June or beginning of July 1999. (Henderson Dep. at 116.) Henderson's charge was not filed until July 18, 2000. Thus, Henderson's own testimony establishes that her claims based on Ford's alleged failure to offer her jobs are untimely under the statute of limitations period for both claims.

In her brief opposing the Motion to Strike, Henderson responds to the statute of limitations defense. She argues that her claims are timely because she filed her lawsuit

---

[2] Ford points out that the lack of written notification by Henderson during the time period in question is in contrast to the 15 written requests Henderson made during the period October 1994 until November 1997.

within 50 days after she received the notice of right to sue from the MDHR. The timing of the filing of the lawsuit is irrelevant, however, if her initial charge was untimely. Because that charge was filed more than one year after the last alleged act of discrimination, the charge was untimely and her claims regarding that discrimination must be dismissed.

2. Causal Connection

Ford asserts that Henderson's retaliation claim fails because she cannot show any connection between her protected activities and her termination. According to Ford, the last arguably protected activity in which Henderson engaged was more than two years before her termination. The passage of two years' time between Henderson's protected activity and her termination establishes that there was no causal connection between her activities and her termination. See, e.g., Gagnon v. Sprint Corp., 284 F.3d 839, 851, 852 (8th Cir. 2002) (one month's time between response to EEOC claim and adverse action did not establish causation).

Henderson does not offer evidence that she engaged in any protected activity after the last activity that Ford mentions. Her brief repeatedly states that she engaged in protected activities "from 1991 onward." (See, e.g., Pl.'s Opp'n Mem. at 27.) The latest pre-termination activity to which she points, however, was assisting Janell Ross in complaining about allegedly discriminatory treatment in the spring of 1997. (Henderson Dep. at 195-96.) She also raises her testimony in a recent trial involving Carol Smith's allegations of discrimination against Ford. However, this trial was held in late July and early August 2001,

almost two years after Henderson's termination, and cannot form the basis for Henderson's retaliatory discharge claim. The other protected activities to which Henderson points are even more temporally removed from her termination than her assistance to Janell Ross. Henderson has failed to establish a causal connection between her protected activities and her termination and thus her retaliation claim fails.

**CONCLUSION**

Henderson's claims based on Ford's alleged failure to offer her jobs within her work restrictions are untimely. She has failed to show a causal connection between her protected activities and her termination, and thus her retaliation claim also fails.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 31) is **GRANTED**; and

2. Defendant's Motion to Strike (Clerk Doc. No. 39) is **DENIED as moot.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 16, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See, 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*